UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RAYMOND J. (JOSEPH) LECOMPTE | CIVIL ACTION |
| VERSUS | NO. 22-1355 |
| DYLAN HENDRICKS (DEPUTY SHERIFF), ET AL. | SECTION "A"(4) |

### REPORT AND RECOMMENDATION

Before the Court is a **Motion for Summary Judgment (ECF No. 11)** filed by defendant Deputy Sheriff Dylan Hendricks.[1]  The motion and the underlying matter were referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and(2)**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

**I.    Factual and Procedural Background**

    **A.    The Complaint**

Plaintiff Raymond Joseph LeCompte ("LeCompte") was an inmate housed in the Terrebonne Parish Criminal Justice Complex ("TPCJC") when he filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983.  ECF No. 4.  LeCompte sued Terrebonne Parish Sheriff Deputy Dylan Hendricks in his official and individual capacities alleging that Hendricks violated constitutional rights under the 8th Amendment to the U.S. Constitution and under the Louisiana Constitution.  LeCompte also alleged Hendricks committed state law

---

[1] The motion lists as a defendant Sheriff Tim Soignet (ECF No. 11, at 1); however, the Court dismissed the claims against Sheriff Soignet with prejudice on January 30, 2023.  ECF Nos. 7, 8.

violations of negligence and intentional torts of battery through excessive force and intention infliction of emotional distress. *Id*., ¶IV, at 4-5; *id*. at 6, 11.

LeCompte claims that around 11:00 p.m. on May 22, 2021, he was arrested by Deputy Hendricks on non-violent misdemeanor charges and brought to the TPCJC. *Id*., ¶IV, at 4; *id*. at 8. He claims the officers found him "stumbling all over the road in a mentally induced state due to intoxication." *Id*. at 8. LeCompte indicates that the initial arrest included criminal mischief, criminal trespass, simple criminal damage to property, two counts of resisting an officer by giving false information, and an outstanding warrant for misdemeanor theft. He further indicates that he was later charged with battery of a police officer resulting from an incident at the hospital when Deputy Hendricks pulled plaintiff from the hospital bed, which incident occurred several hours after the incident that forms the basis of this complaint. *Id*. at 10. He claims that he eventually pleaded guilty to that charge which does not invoke *Heck* to prevent the resolution of the excessive force used at the jail before he went to the hospital. *Id*.

He alleges that upon arrival at TPCJC, Deputy Hendricks was informed by EMT Tina Authement that LeCompte had to be taken to a local hospital for a psychiatric evaluation before he could be booked into the jail. *Id*. at 8. LeCompte claims that with this news, Deputy Hendricks became upset and forceful in his handling of the plaintiff. He alleges that, sometime between 11:15 and 11:40 p.m., Deputy Hendricks escorted LeCompte back to the mail hall of the jail while LeCompte's hands were cuffed behind his back. LeCompte claims that Deputy Hendricks squeezed the handcuffs as tight as possible to show his frustration with plaintiff. *Id*. at 9. LeCompte alleges the force caused him to scream out in pain, and he blacked out for the rest of the night. LeCompte contends he remembers nothing else that night.

Admitting that he was being "difficult to deal with that night due to my intoxicated state," LeCompte asserted that he was not a risk or danger to warrant the use of excessive force in response to offensive words by an emotionally charged inmate. *Id*. at 8. He claims that the Deputy caused extensive damage to the nerves and tendons in his wrists, his fingers "lock[] up" and his thumbs are numb. *Id*. at 9.

LeCompte also asserts that he utilized the administrative grievance process at the jail to no avail. He claims that he has requested medical attention on numerous occasions. He indicates that Dr. Scott Haydel advised him that he may have carpal tunnel syndrome.

**B.    Defendant's Motion (ECF No. 11)**

Defendant Deputy Hendricks moved for summary judgment dismissal of LeCompte's claims based on qualified immunity. ECF No. 11, at 1. Deputy Hendricks points to the incident in the hospital several hours after plaintiff's arrest, when after plaintiff admitted to using methamphetamines. Deputy Hendricks alleges LeCompte purportedly bit him on the ankle while the Deputy was attempting to handcuff plaintiff. *Id*. at 1-2. He notes also that plaintiff pleaded guilty to battery of a police officer on May 9, 2022. *Id*. at 2.

In the supporting memorandum, Deputy Hendricks alleges that he and other deputies responded to a call at 9:27 p.m. on May 21, 2022, of a suspicious person pulling on doors in a business area. ECF No. 11-2, at 1. Deputies arrived to find and question LeCompte who was then arrested. Deputies Hendricks and Dustin Kennedy attempted to handcuff LeCompte, who struggled with them. *Id*. at 2; ECF No. 11-3, Exh. A (Affidavit of Deputy Hendricks); ECF No. 11-4, Exh. B (Affidavit of Deputy Dustin Kennedy). The deputies, however, were able to successfully handcuff, with a double lock, and with some struggle, get LeCompte into their police unit. *Id*.

Upon arrival at TPCJC, LeCompte struggled with the deputies as they tried to get him out of the unit to bring him inside for booking. ECF No. 11-2, at 2; ECF No. 11-5, Exh. C (Affidavit of Lt. Joe Harris). Deputy Hendricks reported per protocol that they had struggled with LeCompte to place the handcuffs and get him in and out of the police unit. ECF No. 11-2, at 2. Per protocol, the medical personnel deemed it appropriate for LeCompte had to be transported to a hospital before booking. *Id.*; ECF No. 11-6, Exh. D (Affidavit of Richard D. Neal); ECF No. 11-7, Attach. D-1; ECF No. 11-8, Attach. D-2.

Without mention of the incident in the hall of the jail which is the only incident asserted by plaintiff in the complaint, Deputy Hendricks further alleges that once LeCompte was at the police unit for transport, he, Deputy Kenney, and Lt. Joseph Harris had to struggle with LeCompte to get him into the unit. ECF No. 11-2, at 2; ECF No. 11-3, Exh. A (Affidavit of Deputy Hendricks); ECF No. 11-4, Exh. B (Affidavit of Deputy Dustin Kennedy); ECF No. 11-5, Exh. C (Affidavit of Lt. Joe Harris). On arrival at the Leonard Chabert Medical Center ("LCMC"), LeCompte was handcuffed to a bed. ECF No. 11-2, at 2; ECF No. 11-3, Exh. A (Affidavit of Deputy Hendricks). After he was examined and set to return to the jail, Deputy Hendricks attempted to free LeCompte from the bed and return the cuff to his wrist. Deputy Hendricks claims that LeCompte evaded his efforts which resulted in the Deputy having to grab LeCompte and both men ended up on the floor. Deputy Hendricks managed to secure the handcuff, but not before LeCompte bit him on the ankle. ECF No. 11-2, at 2; ECF No. 11-3, Exh. A (Affidavit of Deputy Hendricks). Deputy Hendricks secured and double locked the cuffs and escorted LeCompte back to the police unit.

According to Deputy Hendricks, LeCompte became combative upon return to TPCJC and engaged in disruptive behavior by screaming and refusing to walk. ECF No. 11-2, at 4. Lt.

4

Harris assisted Deputies Hendricks and Kennedy in carrying LeCompte to the booking bench. ECF No. 11-2, at 4; ECF No. 11-3, Exh. A (Affidavit of Deputy Hendricks); ECF No. 11-4, Exh. B (Affidavit of Deputy Dustin Kennedy); ECF No. 11-5, Exh. C (Affidavit of Lt. Joe Harris).  He was then charged with the initial crimes and felony battery of a police officer requiring medical attention.  ECF No. 11-2, at 4; ECF No. 11-3, Exh. A (Affidavit of Deputy Hendricks).

During booking, LeCompte disclosed during his medical interview that he daily used methamphetamines including 2 grams on the day of his arrest.  ECF No. 11-2, at 4; ECF No. 11-6, Exh. D (Affidavit of Richard D. Neal); ECF No. 11-7, Attach. D-1; ECF No. 11-8, Attach. D-2. Exh D, D-1, D-2.  Because of this and his behavior, LeCompte was placed in an observation cell to be watched by medical personnel and corrections staff.  ECF No. 11-2, at 4; ECF No. 11-5, Exh. C (Affidavit of Lt. Joe Harris); ECF No. 11-6, Exh. D (Affidavit of Richard D. Neal); ECF No. 11-7, Attach. D-1; ECF No. 11-8, Attach. D-2. Exh D, D-1, D-2.  Four days after his arrest, LeCompte submitted an inmate request form in which he conceded that when he was arrested, he was high on Xanax and admittedly resisted the arresting officers and correctional officers.  ECF No. 11-2, at 4; ECF No. 11-9, Exh. E (Affidavit of Captain Allison Zeringue).

Citing Fourth Amendment standards, Deputy Hendricks argues in his memorandum that LeCompte admittedly resisted the deputies and presented a threat of escape and danger to others. *Id*. at 10.  LeCompte was not complying with the deputies commands and instead struggled to escape.  As a result, it was reasonable for Deputy Hendricks to use force necessary to gain compliance with his commands to plaintiff.  A reasonable officer would have found the force used appropriate under the circumstances.  He further argues that Hendricks cannot point to any case that would demonstrate the force used during the struggle to get plaintiff handcuffed was other than reasonable where plaintiff was high on drugs and combative.  *Id*. at 11.  As such, LeCompte

cannot overcome the defense of qualified immunity where he has not shown the violation of a clearly established right where reasonable force was used in response to his combative behavior and failure to heed repeated commands. *Id*. at 12.

In the statement of uncontested material facts, Deputy Hendricks reiterates only brief facts about the charges brought against LeCompte, LeCompte's admission of methamphetamine use, the bite incident at the hospital, and LeCompte's guilty plea to the bite-related battery of an officer charge. ECF No. 11-1.

## II.   Standards of Review

### A.   Motion for Summary Judgement

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" if resolving that fact in favor of one party could affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Poole v. City of Shreveport*, 691 F.3d 624, 626-27 (5th Cir. 2012).

Where the moving party bears the burden of proof at trial as the plaintiff, or as a defendant asserting an affirmative defense, that party must support its motion with "credible evidence . . . that would entitle it to directed verdict if not controverted at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). Moreover, in evaluating a motion for summary judgment by the party with the underlying burden of proof, the Court considers the substantive evidentiary burden of proof that would apply at the trial on the merits. *Anderson*, 477 U.S. at 252. In such a case, the moving party must "establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original); *see also Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d

376, 378 (5th Cir. 2011). Credible evidence may include depositions, documents, affidavits, stipulations, admissions, interrogatory answers, or other materials. Fed. R. Civ. P. 56(c).

Once the moving party has made its showing, the burden shifts to the non-moving party to produce evidence that demonstrates the existence of a genuine issue of fact. *Engstrom v. First Nat. Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) (citing *Celotex*, 477 U.S. at 322-24). All justifiable inferences are to be drawn in the non-moving party's favor. *Anderson*, 477 U.S. at 255. However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for Summary Judgment." *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003) (internal citations omitted); *see also Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996) (stating that "mere conclusory allegations" are insufficient to defeat a motion for summary judgment). Although the Court may not evaluate evidence on a motion for summary judgment, the Court may make a determination as to the "caliber or quantity" of evidence as part of its determination of whether sufficient evidence exists for the fact-finder to find for the non-moving party. *Anderson*, 477 U.S. at 254. "[T]his court construes 'all facts and inferences in the light most favorable to the nonmoving party.'" *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012) (quoting *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010)).

    **B.**     <u>**Claims Brought Pursuant to 42 U.S.C. § 1983**</u>

Section 1983 creates a remedy for the violation of federal constitutional or statutory rights under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

"The purpose of § 1983 is to deter state actors from using their badge of authority to deprive individuals of federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254-57 (1978)). A plaintiff must satisfy three elements to establish § 1983 liability:

(1) deprivation of a right secured by the U.S. Constitution or federal law;
(2) that occurred under color of state law; and
(3) was caused by a state actor.

*Victoria W. v. Larpenter*, 369 F. 3d 475, 482 (5th Cir. 2004) (citation omitted).

Because § 1983 does not create any substantive rights, "an underlying constitutional or statutory violation is a predicate to liability." *Harrington v. Harris*, 118 F. 3d 359, 365 (5th Cir. 1997) (citation omitted). This requires the plaintiff to identify both the constitutional violation and the responsible person acting under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *accord Thibodeaux v. Bordelon*, 740 F. 2d 329, 333 (5th Cir. 1984).

### C. **Qualified Immunity**

A state official sued in his personal capacity under § 1983 is entitled to qualified immunity from damages, which protects the official from liability for any act that was not objectively unreasonable at the time of the act. *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019) (citing *Lincoln v. Turner*, 874 F.3d 833, 847 (5th Cir. 2017)). The Supreme Court has made clear that

qualified immunity functions as an immunity from suit, rather than a mere defense to liability.

*Pearson v. Callahan*, 555 U.S. 223, 237 (2009).  As the Fifth Circuit has summarized:

> The basic steps of our qualified-immunity inquiry are well-known: a plaintiff seeking to defeat qualified immunity must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  *Lincoln*, 874 F.3d at 847-48 (quoting *Morgan [v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011)]).  When confronted with a qualified-immunity defense at the pleadings stage, the plaintiff must plead "facts which, if proved, would defeat [the] claim of immunity."  *Westfall v. Luna*, 903 F.3d 534, 542 (5th Cir. 2018) (quoting *Brown v. Glossip*, 878 F.2d 871, 874 (5th Cir. 1989)).

*Waller*, 922 F.3d at 599; *Cunningham v. Castloo*, 983 F.3d 185, 190 (5th Cir. 2020) ("qualified-immunity inquiry is two-pronged.").

"[T]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"  *Brumfield v. Hollins*, 551 F.3d 322, 326-27 (5th Cir. 2008) (quoting *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000)).  It is up to the district courts' sound discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case.  *Pearson*, 555 U.S. at 236.

### III. Discussion

LeCompte alleges two incidents of excessive force by Deputy Hendricks during the pre-booking processing after his arrest.  The first incident allegedly occurred in the hallway of the TPCJC before LeCompte was booked into the jail.  LeCompte claims that he was evaluated by medical personnel who declined to accept him into the facility for booking until he was seen at a hospital.  He claims that, after this decision was made, Deputy Hendricks became frustrated with him and as he escorted him back through the main hall of the TPCJC to leave the facility, Deputy Hendricks overly-tightened and clamped down, or squeezed the handcuffs.  LeCompte recalled

that he screamed out in pain and then blacked out causing him to not remember what happened the rest of the night. LeCompte claims that this use of excessive force caused damage to the nerves and tendons in his wrists which still cause him problems.

  A.  **<u>Excessive Force</u>**

Claims of excessive force "in the course of an arrest" are analyzed under the Fourth Amendment. *Tyson v. Sabine*, 42 F.4th 508, 515 (5th Cir. 2022). The substantive due process component of the Fourteenth Amendment prohibiting punishment applies to excessive force alleged to have occurred after all incidents of arrest are complete. *Valencia v. Wiggins*, 981 F.2d 1440, 1449 (5th Cir. 1993); *see also Kingsley v. Hendrickson*, 576 U.S. 389, 397-398 (2015) (Due Process clause protects pretrial detainees from use of excessive force that amounts to punishment). When alleged incidents of excessive force are based on events *prior to booking* the arrestee into a jail, they are covered by the Fourth, rather than Fourteenth Amendment. *See McFarland v. Lee Co. Adult Detention Ctr.*, No. 20CV64, 2023 WL 2576398, at *3 (N.D. Miss. Mar. 20, 2023) (excessive force claim based on events occurring before plaintiff was booked into jail not cognizable under the Fourteenth Amendment, "as the plaintiff was not a pretrial detainee.") (citing *Brothers v. Klevenhagen*, 28 F.3d 452, 457 (5th Cir. 1994); *Gutierrez v. City of San Antonio*, 139 F.3d 441, 452 (5th Cir. 1998)). Nevertheless, courts have held that the Fourth Amendment's requirements apply to allegations of excessive force brought under the Fourteenth Amendment when the allegations of both claims "mirror" each other as they do in this case. *See Gates v. Tex. Dep't of Protective & Regul. Servs.*, 537 F.3d 404, 434-35 (5th Cir. 2008) (holding that Fourth Amendment requirements were adequate to satisfy due process in case in which plaintiffs' Fourteenth Amendment allegations "mirror[ed]" their Fourth Amendment claim); *see also*

*Graniczny v. City of El Paso, Tex.*, 809 F. Supp. 2d 597, 602 n.4 (W.D. Tex. 2011) (construing Fourteenth Amendment excessive force claim under Fourth Amendment).

To state a Fourth Amendment excessive force claim, a plaintiff must allege that he suffered "(1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." *Buchanan v. Gulfport Police Dep't*, 530 F. App'x 307, 312 (5th Cir. 2013) (quoting *Ikerd v. Blair*, 101 F.3d 430, 433-34 (5th Cir. 1996)). The test for reasonableness for the use of force is "not capable of precise definition or mechanical application." *Poole*, 691 F.3d at 627-28 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). In the context of excessive force during arrest, the Supreme Court has identified the following considerations to take into account: "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (quoting *Graham*, 490 U.S. at 396).

Furthermore, a claim for excessive force is actionable only if the plaintiff demonstrates an injury resulting directly and only from the application of force. Although the plaintiff is not required to show a "significant injury," he is required to show that he has suffered "'at least some form of injury.' The injury must be more than a *de minimis* injury and must be evaluated in the context in which the force was deployed." *Lincoln*, 874 F.3d at 846 (quoting *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001)). However, while "a *de minimis* injury is not cognizable, the extent of injury necessary to satisfy the injury requirement is directly related to the amount of force that is constitutionally permissible under the circumstances." *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017). Thus, "[a]ny force found to be objectively unreasonable necessarily exceeds the *de minimis* threshold, and, conversely, objectively reasonable force will

result in *de minimis* injuries only." *Id*. (citation and quotation marks omitted). "[A]s long as a plaintiff has suffered 'some injury,' even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force." *Id*. (quoting *Ikerd*, 101 F.3d at 434-35).

### B. Disputes of Fact Remain in this Case

As outlined above, to establish a Fourth Amendment excessive force claim, LeCompte would have to establish an injury that resulted from Deputy Hendricks's use of unreasonably excessive force. If a reviewing court were to consider his claims as having been brought under the Fourteenth Amendment, the focus would instead be on whether Deputy Hendricks's use excessive force amounted to punishment. *See Kingsley*, 576 U.S. at 397-398.

In the motion for summary judgment and its attachments, Deputy Hendricks describes in great detail around five incidents of disruption, violence, and resistance by LeCompte during the course of the initial detention at the arrest location, in the booking area of the TPCJC, and during transport of LeCompte on the night of his arrest. Deputy Hendricks also notes in his pleadings that LeCompte admitted being difficult to handle and under the influence of drugs on the night of his arrest. The motion and accompanying documents also make clear that the battery on a police officer charge, to which LeCompte has since pleaded guilty, arose from the bite incident at LCMC not during the events at TPCJC about which LeCompte complains. As LeCompte points out in his complaint, the bite incident was hours *after* the alleged use of force about which he complains.

In his supporting affidavit, Deputy Hendricks describes the events in the booking area at the jail and at the transport vehicle before going to the hospital:

> . . . Plaintiff LeCompte was both combative and non-compliant and was screaming loudly as we brought him into the Booking area. [. . .]

12

> Due to Plaintiff LeCompte's combative nature and resistance, and the fact medical was unable to complete their examination of him, we were ordered to take him to Leonard Chabert Medical Center (hereinafter "LCMC") to be checked out.
> Plaintiff LeCompte again resisted our effort to get him into our unit for transport and myself, Deputy Kennedy, and Lieutenant Harris to get him into my unit for transport.

ECF No. 11-3, at 2. Deputy Hendricks made no mention of a walk down the main hall between the booking area and the transport unit where LeCompte claims he unnecessarily squeezed and tightened the cuffs. The affidavit does not mention LeCompte being combative or disruptive in a hallway at the jail.

Deputy Kennedy's affidavit also avers almost the exact same statements as Deputy Hendricks with no mention of a walk down the hallway in TPCJC during which LeCompte claims Deputy Hendricks used excessive force. ECF No. 11-4, at 3. Lt. Harris provided a similar but different perspective of the officers efforts to get LeCompte back into the police unit for transport to LCMC. ECF No. 11-5, at 2. Lt. Harris, however, also did not mention anything occurring in the hallway during the walk from the booking area back to the police unit.

The summary judgment evidence provided by Deputy Hendricks indicates that LeCompte was disruptive and loud in the area where medical personnel attempted to examine him and refused to accept him until he was seen at LCMC. The evidence also reflects that, once back at the police unit, LeCompte was combative and resistant to their efforts to get him into the unit to go to the hospital before being calmed down by Lt. Harris. None of the evidence, however, speaks to the factual events alleged by plaintiff to have occurred in the hallway of the TPCJC between the booking area and the police unit when he allegedly was not resisting or being disruptive. Even if Deputy Hendricks and the others had cause to forcibly restrain LeCompte at other times during the course of the night, "an exercise of force that is reasonable at one moment can become unreasonable in the next if the justification for the use of force has ceased." *See Lytle v. Bexar*

13

*Cnty.*, 560 F.3d 404, 413 (5th Cir. 2009) (discussing reasonableness of officer's use of force after threat of harm had passed).

The summary judgment evidence simply does not mention a hallway or, more importantly, that LeCompte engaged in disruptive behavior in that hallway which required reasonable force in the form of squeezing and tightening of the handcuffs. There also is no evidence offered to counter LeCompte's allegations that Deputy Hendricks's actions in that hallway caused him more than *de minimis* injury to his wrists.

Thus, accepting the facts in the light most favorable to plaintiff, there remain genuine disputes of fact regarding the alleged incident in the hallway where LeCompte claims Deputy Hendricks tightened the handcuffs out of frustration and this act caused plaintiff pain, loss of memory, and continuing nerve problems in his wrists. There also is insufficient summary judgment evidence for the court to determine whether Deputy Hendricks's is entitled to qualified immunity for the alleged use of force in the hallway, *i.e.* tightening of the handcuffs while plaintiff allegedly was not resisting.

For the foregoing reasons, Deputy Hendricks's motion should be denied because genuine disputes of material facts exist that prevent the grant of summary judgment as a matter of law.

**IV.    Recommendation**

It is therefore **RECOMMENDED** that Deputy Hendricks's **Motion for Summary Judgment (ECF No. 11)** be **DENIED** and that Deputy Hendricks be **ORDERED** to file an answer to plaintiff's complaint within 30 days of the entry of the Court's order on the motion.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from

attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[2]

New Orleans, Louisiana, this 23rd day of June, 2023.

KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE

---

[2] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.